# W. FRANK TUCKER ET AL., RECEIVERS, vs. REBECCA OSBOURN.

### Rescission of Contract Obtained by Misrepresentation.

Equity may rescind a contract made in consequence of material misrepresentations, although they do not constitute such fraud as will support an action at law for deceit.

A building association issued two classes of certificates of indebtedness, the one secured by certain mortgages and the other unsecured. The plaintiff, a woman inexperienced in business, was the holder of a certificate of the former class, when the general manager of the association, who had been the friend and business adviser of plaintiff's deceased husband, induced her to surrender the certificate she held and accept in exchange therefor a certificate of the other and inferior class by representing that it would be for her advantage to do so, while in fact such exchange was for the benefit of the association only. Upon a bill for the rescission of the surrender and the restoration to plaintiff of the surrendered certificate, *held*, that whether the general manager's representations were made with fraudulent intent or not, the plaintiff is entitled to have the contract rescinded.

Appeal from the Circuit Court No. 2, of Baltimore City (SHARP, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*William Colton* (with whom were *Crain & Hershey* on the brief), for the appellants.

*Beverly W. Mister* and *George T. Mister*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The purpose of this suit was to have an exchange of certain securities annulled because it had been procured through fraud and misrepresentation and to have the parties to the transaction restored to their original rights.

The amended bill alleges that the Equitable Building, Loan and Investment Association of Baltimore City was incorpor-

ated under the General Laws of Maryland relating to building
and homestead associations and had its principal place of bus-
iness in Baltimore City. Its capital stock, according to its
charter, consisted of two hundred and fifty thousand shares
of the par value of $100 each, divided into a number of dif-
ferent classes, two of which were respectively designated
"Debenture Income Stock" and "Class A Full Paid Stock."
The so-called debenture income stock was in the nature of a
bond or obligation for the payment of a definite sum of money
with coupons attached for the interest thereon maturing quar-
terly. and the payment thereof was secured by mortgages of
like amount on real estate, which were deposited with the
Mercantile Trust Company under an agreement between it and
the building association. The so-called full paid stock Class
A was similar in its general character and terms to the de-
benture income stock, but its payment was not secured by
mortgages or other collateral.

The appellee as distributee of the estate of her deceased
husband became the owner of $2,000 of the debenture income
stock of the said association and was as such entitled to the
benefit, to that extent, of the collateral mortgages in the
hands of the trust company. On or about April 26th, 1901,
she received a letter from William A. Casler, the general man-
ager of the association, requesting her to call at his office on
the next day and bring with her the certificates for her debent-
ure income stock. She complied with the request taking her
certificates with her, when Casler represented to her that the
trust company would consent to the appointment of a receiver
for the association in an equity suit then pending against the
two corporations and in that event she would lose the money
invested in her certificates as the guaranty agreement between
the two corporations would become invalid and that she could
avoid this threatened loss only by an immediate surrender of
the certificates for cancellation. Influenced by these represen-
tations which she believed to be true and having no oppor-
tunity to consult any adviser and, being herself without suffi-
cient knowledge of business matters to understand the true

value and effect of the guaranty to which she as holder of the certificates was entitled, she surrendered her debenture income stock certificates to him and received in lieu thereof a like amount of full paid stock Class A, which was an inferior security not entitled to the benefit of the collateral mortgages by which the surrendered stock was secured.

After she had an opportunity of reflecting upon what she had thus been induced to do and of consulting counsel in reference thereto she believed that she had been deprived of her property by untrue representations and made demand on the building association for a return of the certificates which she had surrendered, at the same time offering to surrender the new stock which had been given to her in lieu thereof, but the association after promising her through her counsel to return them and parleying with her for a time refused to return them.

The bill further alleges that the representations made to her by the general manager of the association by which she was induced to surrender her debenture income stock were untrue and fraudulent and were made for the purpose of securing possession of the stock, and it prays that the agreement of the surrender of her stock may be annulled and the association be required to return the surrendered certificates to her or to issue to her new ones of like character, or if that cannot be done to pay to her the par value of the stock, and that the trust company be enjoined from surrendering to the building association the collateral mortgages held by it for the protection of the debenture income stockholders, and for general relief.

The answer of the association admits the original ownership by the plaintiff of the $2,000 of debenture income stock and its surrender by her and the issue to her in lieu thereof of a like amount of full paid stock, but denies that the plaintiff was induced to make the exchange of stocks by the alleged misrepresentations or untrue statements set out in the bill or by any misrepresentation, persuasion, fraudulent conduct or undue influence whatever on its part or the part of its manager.

On the contrary it asserts that the entire situation was explained to her minutely and carefully and all the reasons *pro* and *con* for the exchange of the stock were gone into and she fully understood the same and thereupon voluntarily and willingly signed the agreement and made the exchange of the stock.  It admits the interview between its general manager and the plaintiff's counsel subsequent to the exchange of the stock, but it denies that any promises such as are alleged in the bill were made to plaintiff's counsel or that it was ever agreed to take up the stock in the manner in the bill alleged, but it avers that the plaintiff's counsel having said that she was in need of money the general manager promised that as soon as the association was in a condition to do so he would ask its board of directors to make her a loan upon her new stock of 90 per cent of its face value.

The Mercantile Trust Company also answered the bill admitting that it had acted as custodian of securities for the benefit of the holders of the debenture income stock of the building association, but averring that it had ceased to be such custodian and had delivered the securities to the association after the certificates of all of such stock had been surrendered to it and cancelled.  This defendant averred its entire ignorance of the alleged improper means by which the association was charged in the bill with having induced the plaintiff to surrender her stock to it.

During the progress of the suit the building association was declared insolvent and dissolved by a decree of Circuit Court No. 2, under a bill filed by James Lynch in accordance with ch. 263 of the Acts of 1894 and the appellants were appointed statutory receivers of its affairs.  Thereupon on petition of the plaintiff they were by an order of Court passed in this suit April 23rd, 1903, made defendants as the representatives of the dissolved corporation and since then the case on behalf of the defendant has been conducted by them.

It appears from an inspection of the certificates for the two classes of stock, which were produced at the hearing of the appeal that they are both pecuniary obligations of the associa-

tion rather than ordinary certificates of stock. The certificates for the debenture income stock have on their face the certificate of the Mercantile Trust Company that they are part of an issue of $100,000 of stock covered by the trust agreement between that company and the building association, and a copy of the agreement itself is endorsed on each certificate. The agreement, which is quite long, states in effect that the building association has placed in the hands of the trust company first mortgages on real estate of the face value of $100,000, to secure the holders of the debenture income stock in the manner set forth in the agreement. The certificate for the full paid stock makes no mention of any security set apart for the protection of its holders. The debenture income stock was therefore on its face a security of higher rank than the so-called full paid stock for which the plaintiff was induced to exchange it.

After much testimony had been taken on both sides the case came on to be heard, and the Circuit Court by the decree appealed from rescinded and set aside the surrender by the plaintiff of her debenture income stock and the agreement signed by her at the time of the surrender and directed the delivery to her of the surrendered certificates on the return by her of the full paid stock which she had received in lieu thereof, and declared her entitled to the same preference, out of the assets so far as they had come to the hands of the receivers which had theretofore been pledged with the trust company to secure the debenture income stock, to which she would have been entitled if she had never surrendered her debenture income stock and authorized her to file her claim for such priority in the case in which the affairs of the building association were being liquidated by the receivers. The decree dismissed the bill as to the Mercantile Trust Company.

The questions of the competency of the building association under its charter to enter into the agreement with the trust company, and of the true operation and effect of the agreement, if valid, upon the assets in the hands of the receivers will arise for determination in the case in which the building

association is being wound up when the plaintiff files her claim therein. What we are called upon to determine in the present case is whether the Circuit Court was correct in rescinding the surrender by the plaintiff of her debenture income stock and restoring her to her original position as against the building association and its assets in the hands of the receivers. In other words the question before us is whether the surrender was procured from her under such circumstances as entitled her to be relieved from it.

While it is well established that in actions for deceit the *scienter* must be expressly alleged and proven it is equally clear that different principles may be applied to a bill in equity to rescind. In the recent case of *Cahill* v. *Applegarth*, 98 Md. 503–4, we said on this subject "In equity 'the gist of the inquiry is not whether the party making the statement knew it to be false but whether the statement made as true was believed to be true and therefore if false deceived the party to whom it was made.' *Joice* v. *Taylor*, 6 G. & J. 58. In *Trimble* v. *Reid* (97 Ky. 713) the Court said: 'In such a case the Court will on these facts rescind the contract without any fraudulent intent being shown, without any knowledge actual or constructive on the part of the vendor that the statements were in fact false.' In *Kountze* v. *Kennedy* (147 N. Y. 124) it was said: 'The law affords remedies for the consequences of innocent misrepresentation. A contract induced thereby may in many cases be avoided and the equitable powers of Courts are frequently interposed for the rescission of contracts or transactions based upon mistake or innocent misrepresentations.''

It has repeatedly been held that officers and directors when representing their corporations in transactions connected with them are bound to know the truth of the facts which they assert and cannot escape upon the ground that they were ignorant of their falsity. *James Clark Co.* v. *Colton*, 91 Md. 204; *Hubbard* v. *Weare*, 79 Iowa, 678; *Giddings* v. *Baker*, 80 Tex. 308; *United Socy.* v. *Underwood*, 9 Bush. 609. In the present case Casler was not only skilled in the affairs of building associations from long experience but he had been

connected with the management of the present one from its organization.  He had also been a trusted friend and adviser of the appellee's husband during his lifetime and had recommended to him the purchase of the very stock which she was induced to surrender.  She was a widow inexperienced in business and was without any separate or independent adviser.  In that situation he was under the highest obligation to deal with her with complete candor and to make full disclosures of the facts on which his representations were based, and his transactions with her will not be upheld against her objection unless they appear to be fair and just.

Let us now examine in the light of these principles the circumstances under which she was induced to make the exchange of stocks.  Casler himself testifies that after the situation of the association with reference to its debenture income stockholders and to the trust company holding the assets pledged for their protection had been fully discussed from all standpoints by the directors of the association and considered by the counsel of both corporations it was "determined that the only feasible way out of the difficulty was if possible to arrange with the then present debenture income stockholders, *to persuade upon them to surrender the certificates of stock which they then held for other stock.*"  So that the association having gotten the debenture stock into its possession would be in a position to terminate its agreement with the trust company.

Having this end in view Casler addressed to the appellee the following letter written upon the letter head of the association.  "Dear Madam: I would like you to call here at this office tomorrow between the hours of 10 A. M. and 2 P. M. and bring your debenture income stock certificate which you hold in this association.  I would prefer to see you tomorrow, but in case you cannot come, the same hours on Monday will suit. Yours very truly, Wm. A. Casler, General Manager."  This letter did not mention the purpose of the requested meeting nor was it accompanied by any circular giving information to stockholders of the nature and effect of the exchange of stocks which they were to be asked to make.

The appellee responded promptly by calling to see Mr. Casler at the office of the association taking her certificates of stock with her.   She says that he then informed her that he had asked her to bring the certificates to surrender them to him.    That the trust company was tired of them and would call a receiver and she would lose her money if she did not turn them over to him, that a suit was then pending against the two corporations but the Court would permit its withdrawal.   She then, according to her account, said she would like to see some one who knew more about business than she did before surrendering them and "he said now was the time to act tomorrow the board meets."   He further said he was advising her as he would his mother and she having every confidence in him believed him and complied with his request and made the exchange of the stocks.   Casler on the contrary testified that at the interview with the appellee he stated the situation fully and correctly to her and she then seemed perfectly willing to make the exchange and did so voluntarily, but James S. Armiger testified that when he called on Casler in company with the appellee a few days afterwards and asked him why he had not permitted her to consult with some friends before making the surrender Casler did not deny having advised to make the surrender in order to save her money but attempted to defend his course in having given her that very advice.

Without finding it necessary to determine whether Casler's representations to the appellee were intentionally false and made with fraudulent motives we are convinced that the appellee was sent for by him for the purpose of persuading her to surrender her stock for the benefit of the association and that she was not informed in advance of that purpose nor afforded an opportunity to secure any disinterested advice on the subject, and further that at the interview in his office he was armed with superior skill and experience and had a complete knowledge and understanding of the situation and that she being inexperienced and *inops consilii* was induced by him to exchange her stock for an inferior security by representations on which she relied that did not sufficiently inform her

of the true nature of the act which she was requested to perform.

Under these circumstances we think the learned Judge below was right in restoring the appellee by this decree to her original position as against the building association and the assets in the hands of its receivers and we will therefore affirm his action.

As we have determined to affirm the case upon its merits we deem it unnecessary to pass upon the motion made by the appellee to dismiss the appeal.

*Decree affirmed with costs.*

(Decided June 22nd, 1905.)